**Carl Eugene BOWMAN, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Respondent-Appellee.**

No. 72–1033

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 1, 1972.

---

* ■ Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of N. Y., 431 F.2d 409, Part I (5th Cir. 1970).

Carl Eugene Bowman, pro se.

Robert L. Shevin, Atty. Gen., Tallahassee, Fla., Nelson E. Bailey, West Palm Beach, Fla., for respondent-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

This is an appeal from an order of the district court denying the petition of a Florida state prisoner for a writ of habeas corpus. We hold that the petitioner deliberately by-passed available state court relief on the only viable federal habeas ground he raised and we affirm.

Carl Eugene Bowman was sentenced to 20 years imprisonment after conviction upon trial by jury of having committed a lewd and lascivious act in the presence of a girl under the age of 14 years. On direct appeal, the judgment was affirmed without written opinion but with citation to several cases in support of the judgment. Bowman v. State, 227 So.2d 357 (Fla.App.1969). Bowman subsequently filed a motion to vacate the sentence pursuant to Fla.R.Crim.P. Rule 1.850 (now Rule 3.850), 33 F.S.A. After a full evidentiary hearing on all points raised on this motion, relief was denied in an extensive opinion supported by findings of fact and conclusions of law. This judgment was affirmed on appeal. Bowman v. State, 250 So.2d 672 (Fla.App.1971). Based on the state record, which includes the trial transcript of the evidentiary hearing on the motion to vacate, the federal judge below found all errors alleged by Bowman to be without merit, and denied habeas relief. 28 U.S.C.A. § 2254(d). Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1962). We agree with the federal court below that Bowman re-

ceived a full and fair hearing on all his claims in the state court, and having afforded that court's findings their presumption of correctness, we likewise conclude that no error of constitutional import has contributed to Bowman's imprisonment.

One of Bowman's contentions made in the court below and reasserted here requires special consideration. He contends that the confession he made to this crime, which was introduced against him during the trial, was obtained in violation of his Fifth Amendment rights. Specifically, he alleges that since he was intoxicated both at the time the arresting officers gave him full *Miranda* warnings and also when he signed the written confession, the confession was involuntary and therefore inadmissible.

During the course of the original criminal trial, but outside the presence of the jury, a thorough inquiry was made into the circumstances surrounding the receipt of Bowman's confession. Several officers, as well as Bowman himself, testified concerning the arrest, the giving of the Miranda warnings and the signing of the confession. Bowman at that time asserted that certain threats had been made to induce his confession. The judge found these claims to be untrue, and ruled that the confession was voluntary and could be considered by the jury. Not once during this preliminary hearing, nor during the trial before the jury, nor yet in the closing arguments was there even a suggestion that Bowman's faculties had been impaired due to ingestion of alcohol. Though Bowman was at all times represented by competent counsel, both before the trial court and on the direct appeal of his conviction, at no time was the intoxication claim presented for the consideration of the Florida Criminal Courts.

Upon the occasion of his motion to vacate, Bowman attempted for the first time to collaterally attack his conviction on the ground that the trial judge erred in admitting the confession on grounds that it had been improperly extracted from one too drunk to act voluntarily.

Though the judge at this post-conviction hearing permitted a full exposition of this contention, he concluded that evidence supporting such a claim should have been introduced at trial and could not be considered for the first time on motion to vacate. The wisdom of this policy and the correctness of the judge's ruling require no discussion here. Baker v. State, 188 So.2d 583 (Fla.App. 1966); Ziegler v. State, 180 So.2d 477 (Fla.App.1965); Coyner v. State, 177 So.2d 715 (Fla.App.1965); Lee v. State, 173 So.2d 520 (Fla.App.1965); Jackson v. State, 166 So.2d 194 (Fla.App.1964); Duncan v. State, 161 So.2d 718 (Fla. App.1964); Austin v. State, 160 So.2d 730 (Fla.App.1964). *See also* McCluster v. Wainwright, 453 F.2d 162, 164, n. 5 (5th Cir. 1972) and cases cited there.

At the hearing on motion to vacate, Bowman testified concerning his failure to raise the intoxication issue at trial. The pertinent questions and answers from his testimony were as follows:

### DIRECT EXAMINATION

Q Now, the police officer knew you were drunk, didn't he?

A Yes, sir. They knew I was drunk.

Q Did you tell him you had been drinking?

A No, they know'd that by looking.

Q Were you staggering around?

A Yes, sir.

Q Did your wife tell the police officer you had been drinking?

A No, sir. I told my wife not to say anything about my being drunk because I didn't believe there was nothing to this, no way. It looked bad, my being drunk with my family and my kids.

Q At the trial, the confession was proffered in evidence and you were given an opportunity to state certain reasons why the confession was invalid? And according to the transcript you did talk about the fact that you had been threatened with 99 years and that you

had not read the statement and the confession and had not been read your rights properly. If you didn't understand they were your rights being read to you, why didn't you say anything about being drunk?

A  Why didn't I say something about being drunk then?

Q  Yes.

A  Well, I didn't want to say nothing about being drunk on account of my children. I didn't think there was anything to this. I knew this was all a bunch of lies.

Q  That was in the trial also?

A  What was that?

Q  Was that in the trial itself?

A  About me being drunk?

Q  Yes.

A  No.

Q  Why not?

A  I didn't want to because, like I said, about my children.

Q  Did you tell Mr. Davis, who was at that time your attorney, that you were drunk?

A  I didn't tell nobody. I told my wife not to say anything about it.

### CROSS-EXAMINATION

Q  What was your reason for not telling the Court that you were drunk?

A  What was the reason I didn't?

Q  Yes.

A  I didn't want them to know I was drunk on account of my children. It looked bad.

■ Inasmuch as Bowman has sworn that he deliberately refrained from presenting this intoxication claim to either the trial or appeal court which heard the criminal charges against him, and thereafter the Florida post-conviction forums refused to consider it, the state has never passed upon its merits. The question remains whether the federal courts have either the duty or authority to do so now. This problem has been squarely met by the Supreme Court in *Fay v. Noia*, 372 U.S. 391, 438–439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963) in this language:

. . . We therefore hold that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts and in so doing has forfeited his state court remedies.

But we wish to make very clear that this grant of discretion is not to be interpreted as a permission to introduce legal fictions into federal habeas corpus. The classic definition of waiver enunciated in *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461—"an intentional relinquishment or abandonment or a known right or privilege"—furnishes the controlling standard. If a habeas applicant, after consultation with competent counsel or otherwise, understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts, whether for strategic, tactical or any other reasons that can fairly be described as the deliberate by-passing of state procedures, then it is open to the federal court on habeas to deny him all relief if the state courts refused to entertain his federal claims on the merits—though of course only after the federal court has satisfied itself, by holding a hearing or by some other means, of the facts bearing upon the applicant's default.

While the ambit of a federal court's discretion to deny consideration to a federal constitutional claim is exceedingly narrow, it may be exercised in a case where a waiver of the right to present the claim through orderly state processes is clear and unmistakable. This is such a case.

■ The record, particularly in those parts of Bowman's testimony set out above, conclusively and unequivocally demonstrates that he made a conscious and intentional waiver of his right to

have the trial court decide whether his allegedly drunken state resulted in the extraction of an involuntary confession. The state procedures provided a full and fair opportunity, first before the trial judge, again before the jury, and finally on direct appeal, for a thorough and careful examination of his constitutional claim. He deliberately by-passed these procedures; he purposely chose not to bring the contention to the attention of these appointed forums; he thus specifically and intentionally relinquished his right to assert the claim. A fair assessment of the reasons for Bowman's choice, based on his own testimony, would be that he supposed his drunkenness would prejudice his defense on the merits of the criminal charge, or that he presumed he could overcome the charge without having to challenge his confession, or, as he stated, that he preferred not to have his drunkenness brought to the attention of his family and friends. However, whatever the reasons, and whether they be characterized as strategical, tactical, or something else, they unquestionably amounted to a deliberate by-pass of state procedures. Under Fay v. Noia, in the absence of other extenuating or mitigating circumstances (not present here), that is enough to require the denial of federal habeas corpus relief as a matter of law. Any other rule would not only place an impermissible strain upon the comity between the state and federal systems, but would threaten to open the federal courts to a piecemeal retrial of virtually all state criminal proceedings, a conse-

quence which even the wide reaches of the Great Writ were never intended to encompass.

■ One final facet of this problem remains. That is the question of whether, in light of our decisions in Montgomery v. Caldwell, 457 F.2d 767 (5th Cir. 1972); Essex v. Elliott, 456 F.2d 1039 (5th Cir. 1972); Johnson v. Smith, 449 F.2d 127 (5th Cir. 1971); Bonaparte v. Smith, 448 F.2d 385 (5th Cir. 1971); Thomason v. Smith, 442 F.2d 1330 (5th Cir. 1971), and Burton v. State of Alabama, 396 F.2d 755 (5th Cir. 1968), the issue of deliberate by-pass ought now to be returned to the district court for a full evidentiary hearing thereon. We think not. All those cases involved situations where the records were unclear, the facts concerning by-pass were undeveloped, and the petitioner had not been given a sufficient opportunity to come forward with evidence to discharge his burden of showing that no deliberate by-pass had occurred.[1] Nash v. United States, 342 F.2d 366 (5th Cir. 1965). The case at bar is completely dissimilar. Here, because we have already decided that the record clearly compels the conclusion that a by-pass has occurred, it would be foolish, fruitless, and futile to reopen that question now. See Briggs v. Beto, 447 F.2d 1302 (5th Cir. 1971); cf. Wynn v. Smith, 446 F.2d 341 (5th Cir. 1971). Thus we conclude that even though the court below did not expressly discuss or hold a hearing on the issue of by-pass, its decision denying habeas corpus relief was correct, and is

Affirmed.

---

1. We also find inapplicable our decisions in Graves v. Beto, 424 F.2d 524 (5th Cir. 1970), and Moreno v. Beto, 415 F.2d 154 (5th Cir. 1969). In the former, no deliberate by-pass occurred from the failure to present a constitutional claim at time of trial, because the state district judge permitted a presentation

thereof on a petition for habeas corpus; in the latter, failure to contest the voluntariness of a confession at trial was excused on the grounds that the state's established procedure for the consideration of that question was unconstitutional.